thank you and good morning your honors may it please the court my name is Rebecca Abel I'm a deputy federal public defender and I represent mr. glass in this appeal of the district courts denial of his motion to suppress I would like to reserve three minutes for rebuttal here the district court found that officer Gormley of the Oxnard Police Department had reasonable suspicion to stop mr. glass for trespassing when he came upon mr. glass and his friend mr. Andrade as they were walking out the door of an apartment complex there is a body cam video here which I think clearly depicts that officer Gormley accused the men of criminal activity immediately before the men had any chance to do anything suspicious expressly telling them that they don't quote-unquote they don't belong here seconds later he detained them and mr. Andrade's mother arrives she tells the officer she lives there and that mr. glass and mr. Andrade were visiting her mr. glass and mr. Andrade say the same reinforcing that they were there to visit mr. Andrade's mother but the officer is undeterred he wants proof that the two men are on the lease which of course is not necessary as the men stated that they were there visiting a tenant and thus would not necessarily be on the lease and the officer continues to question mr. glass and mr. Andrade but now he transitions his questioning from those questions potentially related to trespass to the defendant and his friends parole and probation status and that really becomes his sole focus he runs a post-conviction status check it's really looking for a reason to search these two men there are two places that the court can reverse here one is at the initial stop which I do not believe was supported by reasonable suspicion and and then at the prolonged detention which again must be supported by independent reasonable suspicion either of those points in time provide independent basis to reverse in this case again I want to note that I think the video is crucial here because it starkly shows the injustice let me ask you a question counsel what is my standard or of you as it relates this motion to suppress your honor as to the factual determinations made by the standard would be clear error however as you know and so if it is the factual determination is clear error we have to take the facts that the district court finds and then apply the law as we need to apply the law after those facts are determined right unless there's clear error yes sir so the district court finds that your client was startled as a hesitating motion as an evidence of an intention to flee clear he was startled clear the last person he wanted to meet with was police officer that's a fact the district court found right yes your honor and then and then the district court found that they that the saw a tattoo even though not apparent from the video it was not there but because the footage wouldn't have given the viewer the same perspective that the police officer could have looked down and saw the tattoo wreck that's a fact yes your honor and then the last is there's a very high crime area didn't rely on his own expertise the OPD tracked and analyzed the crime the apartment in the area surrounding them were consistently among the top five problematic areas the officers also had agent authority again fact yes and did not recognize the two inferred facts by the defendant's silence all of that you're saying won't meet a standard or review for reasonable suspicion your honor I think there's two responses that that I would have to that first in so far as the video evidence is directly contrary I think that we can look at that and and secondly I I think even accepting all of those facts the tattoo as evidence of gang affiliation the high crime area and the nervousness or three things are really what the government and an officer Gormley relied on here and I just don't think those three things are enough what is the standard or review for reasonable suspicion I mean you'd look at what the standard or review is for reasonable suspicion and I guess I'm trying to figure out how it is I could based on those facts which I don't think are once we take those facts we look at we look at it under a de novo review so are those I know it's de novo but you got the facts and the and the whole purpose of this is for me now applying the reasonable suspicion law to these facts and now you're saying no couldn't make it why I think the facts really boil down to just those three things well there's one more they didn't recognize the two yes your honor I don't I don't believe that can have any legal weight here where the all but it's a fact nonetheless absolutely I think the fact that he didn't recognize them and what and that and the arrest was and the reasonable suspicion was for what trespassing and didn't recognize the two had been given age and authority because of such a high crime area and that doesn't add in come on well I think the agent authority really is just supplementing the high crime area we can say high crime area in 15 different ways but I don't think it adds anything to the analysis so is your argument basically that that if you have a suspected gang member in a high crime area who appears startled when he's confronted by the police that those three things assuming that those are not clearly erroneous don't add up to reasonable suspicion yes your honor that is there some case that is there some case that says that I mean I know there are cases about each one of those things individually there's some cases says that those things collectively don't add up in a perfect world all cases that look the same but the totality of circumstances means that every different cases slightly different and that's that are not you know that they don't line up in perfect order every time but I think your honor identifies that at least as to two of that or as to each one of those they've never been held to be sufficient so gang affiliation is has not been held to be sufficient high crime area has not been held to be sufficient and expressly nervousness on multiple occasions by the Ninth Circuit has been held to be insufficient so the question is whether if you add one of each one of the cases you cite about those each specifically says this thing by itself certainly you don't have it by itself here agreed agreed and I do think it is a totality of the circumstances analysis but but when we when we look at the facts here these are two men walking out of an apartment complex there there's not substantial additional evidence to add to that to change the circumstances we're talking about 26 seconds in which the officers see them which takes 15 seconds where no no conversation occurs and then it's really just the remaining 11 seconds where officer Gormley purports to find reasonable suspicion I ask you a quick question about the so-called alleged prolongation of the stop so it seems like there's evidence in the record that so if there was reasonable suspicion to investigate him for trespassing that would make it reasonable to find out their names and where they live and it the parole probation check was all happening at the same time as that so if that's the case how can you say that the stop was unduly prolonged yeah I don't believe that the records check was related to the trespass investigation I think that's where it breaks down these men did not suggest that they were here because they lived there that in fact he didn't have IDs so I mean there was certainly reasonable you'd think if there was a basis for a trespass investigation to find out who he is and where he lives I think he stated he was homeless so I don't know that where he lives is relevant the question is whether he belongs there and the answer to that was provided by his mother by himself and and by mr. Andre okay so your argument isn't that isn't that it was the parole probation part of the check that prolong it is that they shouldn't have been able to do a name check at all that whole that whole exercise was unreasonable given these facts your honor I'm not saying it's never reasonable but given these facts I see I'm I'm nearly out of time so I'd like to reserve the remainder thank you morning your honors and may it please the court Julia news for the United States given the low threshold for preponderance of the evidence given the low threshold for reasonable suspicion which is and the deference that is due to resident law enforcement officers and judges and the inferences that they draw in making reasonable suspicion determinations the district court did not err in finding that there was reasonable suspicion for officer Gormley to detain mr. glass now what officer Gormley saw that night was so can I can I put the same question to you that is able answered for me so if you have suspected if the three if it's the three things that she said just assume that as a hypothetical suspected gang member in a high-crime area who when he's seen by the police shows startlement and some flustering and so on those things three things is that enough for reasonable suspicion I think that those three things would be enough for reasonable suspicion your honor and I want to talk a little bit more and give some more context to the high crime the high crime finding that there was in this particular case and I think it's important just to look at the gateway complex now it was trespass and the officer Gormley explained that trespassing at the complex was linked to some specific crimes it was linked to gang activity was linked to narcotics offenses and it was linked to theft and so what officer Gormley saw knowing with that background information what he saw was two apparent gang members walking out of the complex after midnight with heavy duffel bags yes he didn't say the duffel bags is something he relied on he didn't he didn't know the duffel bags he explained the duffel bag is something that he observed when he came up and and no I think when he was articulating what it was that he relied on didn't indicate that but the reasonable suspicion analysis is an objective standard and what you see at one point an elderly lady comes out and she said these are my boys they're not trespassing with the officers still have reasonable suspicion after hearing that from the lady yes your honor and I think that the context again of that is important at that point officer Gormley did not know who that woman was at that point officer Gormley knew however that there were individuals in the complex that he called friendlies friendlies who would provide support and assistance to individuals when they were being confronted by law enforcement officers and so what officer Gormley is confronting is an individual comes out she's understandably upset she she kind of claims them and says that they are her children and an officer Gormley then takes steps to that I would say would tend to verify or corroborate that he asks what the men's identities are he asks them where they live he asked them for their address and he even asks mr. Andre you know what is the address of the complex and what is the unit number that your mother lives in and and as officer Gormley said he didn't know that the street address for the apartment at all and he was unsure of the unit number now given those circumstances I don't think that reasonable suspicion was dispelled during the stop and the steps that officer Gormley took to continue to try to verify and corroborate what what the woman who turned out actually to be miss Andre Mr. Andre's mother and to turn to determine what whether what she was saying was true now the question here is did the officers was it the officers to stop them was it reasonable for the officers to run the records check the identity check and was it reasonable for the officers to run the criminal history check and on the records checkpoint in particular which which I think as the opening argument made clear kind of is the crux of the defense argument I want to point this court's attention to Hibble and Christian both of which are cited in the government's answering briefs and in both Hibble and Christian the Supreme Court and the Ninth Circuit have recognized that checking a person's identity has significant investigative and safety value during a reasonable suspicion case stop now the investigative value is it can tell you whether someone's wanted it can facilitate someone's location later it can help clear a suspect and here I think that the investigative value was enhanced because mr. glass had no ID and that's quite similar to the facts that this court confronted in Christian where the individual that they stopped wasn't able to provide any proof of his identification now so counsel it's my understanding then that you're really citing Christian for the authority to make the inquiries about the identity yes what you're doing yes I think it also supports our argument that there is authority to to make an inquiry regarding criminal background and Hibble does as well because both of those cases recognize that one of the values that an identity play well if somebody doesn't have I thought your argument was they then make a check background check because they didn't have the identity on him I thought that was your argument so I think that that enhances the investigative value that the identification could play in the process but I do think that even if they both were had been able I'm sorry even if they both had been able to provide proof of their identification I think it's clear under Christian and Hibble that a court or that that the officer still could run those identity checks because identity checks have an independent investigative and safety value and I want to enhance or emphasize this safety value than an identity check the path as Hibble was so you're saying then that the background check was just a normal thing that happens in every one of these kind of situations based on Christian I think that it would be reasonable to do this in most stops before you have reasonable suspicion dispelled and I think that that's quite clear from Hibble Hibble in indicates that that checking somebody's identity is an accepted part of most Terry stops that's what the proposition that Hibble stands for and and again Hibble makes clear kind of why it would be reasonable to do that during most reasonable suspicion based stops when you still have reasonable suspicion and I do want to dispel reasonable suspicion the stop is over you can't run the identity check at that point you couldn't run a criminal history check at that point but here reasonable suspicion wasn't dispelled and it was reasonable for the officers to continue to pursue the identity checks and the background checks that they ran and again the safety value of these background checks is important what Hibble and Christian recognized is that a background check and identity can facilitate determination if somebody has a record of violence now that is only relevant if you can actually run a criminal background check to check whether somebody has a violent criminal history and so given those circumstances given the precedent I don't really think that it was unreasonable under these circumstances for officer Bormley to run the checks that he did and again what these circumstances are is that you have two apparent gang members in a high-crime area late at night coming out of a further questions I would be I wouldn't be able to sleep if I didn't what note one clarification that I've noted last night and I want to point out that on page 32 of mr. glasses opening brief and page 37 of our answering brief both parties noted that officer Bormley's body cam showed no pedestrians or other individuals going into or out of the complex during the encounter that is true there is nobody apparent on officer Bormley's body cam but last night I actually reviewed the other officers body cam that was involved in the encounter which is actually not part of the record but it was produced in discovery and that does show a pedestrian and it also shows a couple of individuals entering the complex at that time however mr. Andre and mr. glass are the only individuals who exit the complex hauling a heavy bag they have evidence indications of gang membership and as the district court noted mr. glass had a very nervous and startled reaction to the officers was very fidgety and he had halting responses now given that entire context officer Bormley had reasonable suspicion and this court should defer to the inferences drawn by both officer Bormley and the district court in that regard unless there are any further questions the government will submit on the briefs thank you thank you your honor just I think in response to clarify the defense's I don't think there's any question that they had a right to ask mr. glass mr. Andre their names the question is whether they had which Christian stands for they were looking for an identified person named Rick James and only because the the it was reasonably related to that question who is Rick James were they able to conduct the background check same thing Hibble says that that a statute requiring name disclosure is fine the question is whether you can go scale records check of individuals when you're looking to find out whether they are visitors to a property and the mother of one of the two is there saying that they were here visiting me if I were questioning that I would ask her do you live here with that your honors I would submit thank you both for your helpful argument cases been committed
judges: N.R. Smith, Kennelly, Lee